T.C. Memo. 2013-191

UNITED STATES TAX COURT

PAULINE T. GOLIT, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27383-10.                    Filed August 21, 2013.

<u>Wilfred I. Aka</u>, for petitioner.

<u>Paulmikell A. Fabian</u> and <u>Catherine G. Chang</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency (notice), respondent determined a deficiency in petitioner's 2008 Federal income tax of $6,724 and an accuracy-related penalty of $1,345.  Petitioner assigned error to the notice and claimed a $1,500 overpayment of her 2008 tax.

**[*2]** Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for 2008, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

Some items have been established, and we need not further discuss them. First, we have made absolute our order of October 25, 2011, to show cause under Rule 91(f), deeming established the fact that during 2008 petitioner received unreported income in the following amounts: $299 in ordinary dividends, $166 in qualified dividends, and $32 in capital gains. Additionally, the parties agree that petitioner is entitled to a deduction of $186 for interest forfeited.

The issues remaining for decision are whether petitioner (1) is entitled to a charitable contribution deduction of $9,024; (2) is entitled to miscellaneous itemized deductions totaling $6,751; (3) is entitled to a deduction for a dependency exemption for Albert Salako; (4) is entitled to head of household filing status; (5) has made an overpayment of tax; and (6) is liable for the accuracy-related penalty under section 6662(a). We will make some preliminary findings of fact and then address those issues one by one, making further findings as we proceed.

**[*3]**  Petitioner bears the burden of proof.  See Rule 142(a).[1]

Preliminary Findings of Fact

When she filed the petition, petitioner resided in Norwalk, California. During 2008, petitioner was employed as a registered nurse by Los Angeles County-University of Southern California Medical Center.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2008, on which she reported a total tax liability of $21,532.  On the Form 1040, she elected head of household filing status and claimed a dependency exemption deduction for Mr. Salako, whom she listed as her son.  On Schedule A, Itemized Deductions, attached to her return, petitioner claimed, among other deductions, a deduction of $9,024 for charitable contributions by cash or check and deductions totaling $6,751 (before application of the 2% floor) for job expenses and certain miscellaneous deductions.

Respondent issued the notice, in which, among other adjustments, he disallowed petitioner's claimed dependency exemption deduction for Mr. Salako, changed petitioner's filing status from head of household to single, disallowed the

---

[1]Petitioner has not raised the issue of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations.  We conclude that sec. 7491(a) does not apply here because petitioner has not produced any evidence that she has satisfied the preconditions for its application.

[*4] charitable contribution deduction, and disallowed the job expense and miscellaneous deductions. He also determined that petitioner was liable for a section 6662(a) accuracy-related penalty. Petitioner assigned error to respondent's determinations, averring, as pertinent, that she had "evidence to support [the] expenses claimed on Schedule A". She averred nothing in support of her claim of an overpayment.

Charitable Contribution Deduction

On Schedule A, petitioner claimed a deduction of $9,024 for a gift of cash or by check to charity. She testified that during 2008 she made numerous gifts totaling $10,000 to the Church of the Immaculate Conception (Immaculate Conception), a Catholic church in Jos, Nigeria, within the Catholic Archdiocese of Jos.

Section 170(a)(1) allows a deduction for any charitable contribution, payment of which is made within the taxable year, subject to certain limitations. As pertinent to this case, section 170(c) defines "charitable contribution" as a contribution or gift "to or for the use of" an organization "created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States". Sec. 170(c)(2)(A).

[*5]   Petitioner has failed to prove that Immaculate Conception, in Nigeria, was created or organized within the United States or any of its possessions, or under any law of the United States, any State, the District of Columbia, or any possession of the United States.  She has, thus, failed to show that Immaculate Conception is a qualified organization with the meaning of section 170(c), and therefore we sustain respondent's disallowance of the deduction.[2]

Job-Related Expenses

On Schedule A, petitioner claimed a deduction of $6,751 for what she testified were job expenses.  In a statement attached to her Form 1040, she described those as expenses as follows:  $1,308 in union dues, $1,415 in uniform and dry cleaning expenses, $2,613 in journals, magazines, and books, and $1,415 in stethoscopes.

In general, section 162(a) permits as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any

---

[2]At trial, the Court reserved judgment with respect to respondent's hearsay objection to Exhibit 15-P, purportedly a letter from Immaculate Conception offered as substantiation of the claimed contribution, and directed the parties to address its admissibility on brief.  Because petitioner's failure to demonstrate that Immaculate Conception is a qualified organization under sec. 170(c) is a sufficient reason to sustain respondent's disallowance of the deduction, we will not rule on the admissibility of the letter and do not address whether petitioner has shown that she actually paid the amounts claimed.

[*6] trade or business". To be deductible, ordinary and necessary expenses must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. When called upon by the Commissioner, the taxpayer must substantiate the expense. See sec. 6001; see also Higbee v. Commissioner, 116 T.C. 438, 440 (2001) ("[T]he taxpayer bears the burden of substantiating the amount and purpose of the claimed deduction."). We need not accept the unverified and undocumented testimony of the taxpayer as substantiation. See, e.g., Good v. Commissioner, T.C. Memo. 2008-245, 2008 WL 4756483, at *6.

Personal, living, or family expenses are not deductible, except as otherwise expressly permitted. Sec. 262(a).

Union Dues

Petitioner claimed a deduction of $1,308 for union dues. We found petitioner credible on that point and will allow the deduction.[3]

---

[3]At trial, the Court sustained respondent's hearsay objection to Exhibit 14-P, purportedly a letter from petitioner's union claiming to provide a breakdown of the union dues petitioner paid in 2008. We offered petitioner the opportunity to address on brief whether the exhibit satisfies an exception to the hearsay rule. Petitioner has not done so. Our ruling stands. Nevertheless, as stated, we will allow the deduction.

[*7]   Uniforms and Dry Cleaning

Petitioner claimed a deduction of $1,415 for uniforms and dry cleaning.  We will allow the deduction to the extent of $717, the extent to which her Bank of America statements show payments to Uniform Advantage and Carlos Uniforms.

Journals, Magazines, and Books

Petitioner claimed a deduction of $2,613 for journals, magazines, and books.  Petitioner has submitted credit card statements that indicate that petitioner spent $3,847 at Borders Books and Barnes & Noble, as well as receipts from Goodwill listing numerous "Books" among the items she purchased.  Petitioner has not identified the books purchased with any degree of specificity and has not provided any evidence beyond her own testimony that the purchases were necessary job expenses, rather than personal purchases.  We sustain respondent's disallowance of the claimed deduction.

Stethoscopes

Petitioner claimed a deduction of $1,415 for stethoscopes.  Petitioner relies on her credit card statements showing three transactions at New East-West Corp. as support of her claimed expense.  The credit card statements show only where the transactions occurred and the amounts paid, but not the items purchased.  Indeed, the statements show that she spent only $958 at New East-West Corp.,

**[\*8]** and, thus, they do not support her claim on her return that she spent $1,415 for stethoscopes. We have no receipts for stethoscopes and only petitioner's testimony that that is what she spent $958 for at New East-West Corp. We do not find that her testimony and the other evidence persuasively support her claim that she spent either $1,415 or $958, or, indeed, any amount on stethoscopes, and we sustain respondent's disallowance of the deduction.

Dependency Exemption Deduction

Section 151 allows a deduction for personal exemptions. An unmarried individual is entitled to a personal exemption for himself or herself and an additional exemption for each dependent. See sec. 151(b) and (c). The term "dependent" is defined in section 152(a) to include either a "qualifying child" or a "qualifying relative". Those terms are defined in section 152(c) and (d), respectively. Among other necessary elements, a qualifying child must be the taxpayer's child, brother, sister, stepbrother, stepsister, or a descendant of any of them. Sec. 152(c)(1) and (2). A qualifying relative must also bear a specified relationship to the taxpayer. Sec. 152(d)(1)(A). As pertinent here, those relationships include a child or a descendant of a child of the taxpayer and an individual who "for the taxable year of the taxpayer, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household." Sec.

**[\*9]** 152(d)(2)(A), (H).  In both cases, the term "child" includes a legally adopted individual.  Sec. 152(f)(1).

Petitioner has failed to show that she is entitled to the dependency exemption deduction for Mr. Salako.  Petitioner claimed on her 2008 return that Mr. Salako was her son.  Mr. Salako was born on January 12, 1961, and was thus 47 years old at the close of 2008.  Petitioner, born in 1959, is only two years older than Mr. Salako.  Thus, he cannot be her biological son, and we do not find credible petitioner's unsubstantiated testimony that Mr. Salako is her adopted son.  Petitioner does not contend, and there is no evidence to find, that she bears any other familial relationship to Mr. Salako.

Nor has petitioner shown that Mr. Salako was a member of her household during 2008.  In order for an individual to be considered a member of a taxpayer's household, both the taxpayer and the individual must occupy the household for the entire taxable year.  Sec. 1.152-1(b), Income Tax Regs.[4]  Petitioner testified that Mr. Salako lived with her only "temporarily" during 2008 and with a friend for the rest of that year.  Although a temporary absence from the household will not

---

[4]Although sec. 1.152-1, Income Tax Regs., has not been amended to reflect changes in sec. 152 that were enacted by the Working Families Tax Relief Act of 2004, Pub. L. No. 108-311, sec. 201, 118 Stat. at 1169, we continue to rely on the regulation to the extent it is not inconsistent with sec. 152, as amended.  See, e.g., Gaitor v. Commissioner, T.C. Memo. 2010-70, 2010 WL 1407204, at \*2 n.9.

[*10] prevent an individual from being considered as living with the taxpayer for the entire year, see id., there is no evidence as to the actual length of time Mr. Salako lived with petitioner during 2008. Consequently, petitioner has not shown that Mr. Salako satisfied the relationship requirements to be considered either a qualifying child or a qualifying relative.

Moreover, Mr. Salako does not satisfy other requirements to be claimed as a dependent. Mr. Salako, who was 47 years old at the end of 2008, is too old to be petitioner's qualifying child. See sec. 152(c)(3)(A). There is no evidence to support petitioner's claim on brief that the exception to the age requirement for individuals who are permanently disabled is applicable to Mr. Salako. See sec. 152(c)(3)(B). Neither is there evidence supporting her testimony that she provided over one-half of Mr. Salako's support during 2008, see sec. 152(d)(1)(C), nor has she shown that Mr. Salako did not provide over one-half of his own support for that year, see sec. 152(c)(1)(D).

Petitioner has not proven that Mr. Salako was her dependent in 2008. We sustain respondent's disallowance of the dependency exemption deduction.

Filing Status

Section 1(b) provides for an advantageous tax rate for an individual who qualifies as a head of household. Section 2(b) sets forth the requirements for head

**[*11]** of household filing status. As relevant to this case, an individual claiming head of household status must have been unmarried at the close of the taxable year and maintained a household that was the principal place of abode for at least one dependent for more than one-half of the taxable year. Sec. 2(b)(1)(A). As discussed above, petitioner has not proven that Mr. Salako was her dependent for 2008. Petitioner does not claim to have had any other dependents for that year. Therefore, she has failed to prove her entitlement to head of household filing status for 2008.

Overpayment

Petitioner has failed to prove that she overpaid her 2008 Federal income tax.

Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) provides for an accuracy-related penalty of 20% of the portion of any underpayment attributable to negligence or intentional disregard of rules or regulations (without distinction, negligence) or any substantial understatement of income tax. The term "negligence" includes "any failure to make a reasonable attempt to comply with the provisions" of the Code, including a failure to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes "any careless, reckless, or intentional disregard." Sec. 6662(c).

**[*12]** A substantial understatement of income tax exists for an individual if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A).

Section 6664(c)(1) provides that the penalty shall not be imposed with respect to any portion of an underpayment if the taxpayer shows that there was reasonable cause for, and that she acted in good faith with respect to, that portion.

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * *

Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent bears the burden of production with respect to the penalty. See sec. 7491(c). The burden imposed by section 7491(c) is "'only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer.'" Good v. Commissioner, 2008 WL 4756483, at *9 (quoting Weir v. Commissioner, T.C. Memo. 2001-184). Once that burden is met, petitioner bears the burden of proving that she is entitled to relief under section 6664(c)(1). See Higbee v. Commissioner, 116 T.C. at 446.

[*13] Respondent has satisfied his burden of production with respect to petitioner's negligence. The record in this case clearly establishes that petitioner failed to report a portion of her taxable income on her return and failed to maintain records adequately to substantiate many of her claimed Schedule A deductions. She improperly claimed as her dependent son an individual who was only two years younger than herself, did not introduce any documentation in support of her position that he was her son or her adopted son, and improperly claimed head of household filing status.

Respondent has also established that petitioner's understatement of income tax for 2008 is substantial. On her return, petitioner reported her total tax liability to be $21,532 for 2008. Respondent determined a deficiency of $6,724 and, even taking into account the $2,025 of disputed deductions we have allowed, petitioner's understatement still exceeds the greater of 10% of the correct tax liability or $5,000.[5] Therefore, respondent has satisfied his burden of production with respect to the accuracy-related penalty. To avoid the penalty, petitioner must come forward with evidence that she acted with reasonable cause and in good faith.

_____

[5]As discussed above, we have found that petitioner did properly substantiate certain job expenses and miscellaneous deductions totaling $2,025.

**[*14]** Petitioner asserts that she did not understate her income tax because she has substantiated her claimed deductions and thus should not be liable for the penalty. For the reasons discussed supra, petitioner's argument fails.

Petitioner further argues that she should not be liable for the penalty because she hired a tax return preparer for her 2008 return and provided that preparer with "all available documents." Reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. Rather, reasonable cause will be found where the taxpayer selects a competent tax adviser, supplies the adviser with all relevant information, and, in a manner consistent with ordinary business care and prudence, relies on the adviser's professional judgment as to the taxpayer's tax obligations. See United States v. Boyle, 469 U.S. 241, 251 (1985); Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Petitioner raises this issue for the first time on her brief. Although petitioner's 2008 return does bear the signature of a paid return preparer, petitioner did not testify or introduce any other evidence indicating that she supplied her return preparer with all relevant information.

**[*15]** Petitioner has failed to carry her burden of showing that she is entitled to relief under section 6664(c)(1). Therefore, we sustain respondent's imposition of the section 6662(a) penalty.

Conclusion

We sustain respondent's adjustments disallowing petitioner's charitable contribution deduction, a portion of her job expense deductions, and her dependency exemption deduction. We find no overpayment of tax. We sustain respondent's determination that petitioner is not entitled to claim head of household filing status. We sustain respondent's determination of a section 6662(a) accuracy-related penalty.

Decision will be entered under Rule 155.